UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANLEY H. McGUFFIN, Trustee
for BHB Enterprises, L.L.C.,

       Plaintiffs,                        CIVIL ACTION NO. 05-74809

      v.                                DISTRICT JUDGE ARTHUR J. TARNOW

MICHAEL BAUMHAFT,          MAGISTRATE JUDGE VIRGINIA M. MORGAN
UNIVERSAL HOMES LLC,
MIDWEST EXPRESS FUNDING, INC.,
INVESTORS FUNDING LLC, CITY
ENERGY LLC, ENERGY SOURCE
LLC, ACTION LENDING SOLUTIONS,
LLC, GLEN THOMPSON, SHELLEY
LETZER, MICHAEL LETZER,
WORLDWIDE FINANCIAL TITLE
OF MICHIGAN LLC d/b/a TITLE GIANT,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

       This matter is before the court on the motion of plaintiff for summary judgment. Plaintiff seeks to collect the bankruptcy judgment entered against defendant Michael Baumhaft. Plaintiff brought this action against defendant Michael Baumhaft, and other individuals and entities that he is associated with or controls.[1] Plaintiff seeks to recover, *inter alia,* under the federal

---

[1] All defendants except for Glen Thompson and Worldwide Financial, LLC, d/b/a Title Giant were represented by the same counsel, David Zacks and William Roush of the firm Ishbia & Gagleard. Counsel has withdrawn. (#75) Mr. Thompson, represented by James Allen, remains in the case. Worldwide Financial is in default.

-1-

Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§1961, *et seq.*) ("RICO") for defendants' fraudulent activities to prevent plaintiff from collecting a legitimate bankruptcy court judgment debt. Plaintiff also seeks summary judgment on his state law fraud claims, but does not discuss the reasons in the brief. For the reasons discussed in this Report, it is recommended that the motion be denied and the matter be set for trial so that the district court may take testimony and determine facts relevant to the civil RICO and state law claims and, as needed, enter judgment for a sum certain.

**1. The Underlying Judgment**

On September 30, 1998 plaintiff (the bankruptcy trustee for Debtor BHB Enterprises) obtained judgments against certain of the defendants, including Michael Baumhaft, in the South Carolina Bankruptcy Court in the total amount of $619,424 (the Bankruptcy Judgment). The Bankruptcy Judgment was ultimately affirmed by the Fourth Circuit Court of Appeals in 2006. Baumhaft has other judgment creditors as well, including from his own bankruptcy and a judgment in Oakland County Circuit Court. (See, fn. 1 page 2 of Motion and Brief for Summary Judgment) Plaintiff registered the judgment in this court in February, 2006, and began collection actions here. Upon registering the judgment, plaintiff began supplemental proceedings to discover the defendants' assets and to collect the judgment debt. In late 2006, defendant Baumhaft paid $450,000 into the court which was eventually disbursed to plaintiff. (See Related case 06-X-50135). Plaintiff submits that, with interest accrued, the amount owed even with the $450,000 offset is approximately $500,000. (See Brief, fn. 2 page 2) No more specific amount is given.

**2. The RICO Conspiracy**

Plaintiff alleges that in order to avoid paying creditors, Mr. Baumhaft, the other individual defendants and their associated entities entered into a conspiracy to conceal the defendants' assets and to prevent plaintiff from collecting its legitimate debt. Plaintiff alleges that defendant Baumhaft began the conspiracy to shield assets during the late 1990s, even before plaintiff obtained its judgment. Plaintiff argues that in furtherance of this conspiracy, defendants engaged in numerous acts of mail fraud and wire fraud involving the use of "dummy" corporations, nominee ownership, and fraudulent sales and mortgages, all for the purpose of concealing Baumhaft's assets and preventing plaintiff from collecting the underlying judgment. Prior to the institution of this action and continuing, plaintiff incurred significant legal fees and expenses in uncovering defendants' various fraudulent transfers and attempting -- unsuccessfully -- to collect the Bankruptcy Judgment.

**3. The RICO Action**

In 2005, plaintiff filed this action against Respondents (the "RICO Action"). At the time plaintiff filed the RICO Action, plaintiffs submit that defendants had completely frustrated plaintiff's attempts to collect the Bankruptcy Judgment. Plaintiff appears to seek an award of actual damages under § 1964 (c) in the amount of $619,424.00, plus interest to be trebled, less any amount of payment received, plus fees and costs. Thus, essentially the amount is that of the underlying judgment and plaintiff's post-judgment legal fees. Plaintiff does not calculate a sum certain for the total amount in any of the motion papers.

## 4. Summary Judgment

Plaintiff now seeks summary judgment against Mr. Baumhaft and his companies. In this case, the entities are unrepresented and Mr. Baumhaft is now *pro se*, the attorneys having withdrawn after non-payment to them.[2] Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Civil Rule 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. Id. at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Federal Civil Rule 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires

---

[2]In the related case 06-X-50135, attorney Martin Fried recently filed a motion on behalf of Mr. Baumhaft but it is unclear if that representation is continuing. Mr. Fried also represents Mr. Baumhaft's current wife in that case.

-4-

the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324; see also *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F.Supp.2d 1069, 1071 (E.D. MI 2001)( citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987)). However, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter," *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994)( quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted ... to judge the evidence or make findings of fact." *Williams*, 154 F.Supp.2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 130 F.Supp.2d 928, 930 (S.D. OH 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-52; see also *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**5. Civil Rico Claims**

    **A.    Civil RICO-18 U.S.C. § 1964**

Title 18 U.S.C. § 1964, the RICO statute, provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." Section 1962(c) states in relevant part: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

Under Sixth Circuit law, in order to prove a violation of RICO, a plaintiff must show: (1) the existence of two or more predicate offenses as evidence of a "pattern"; (2) the existence of an "enterprise"; (3) a nexus between the pattern of racketeering activity and the enterprise; and (4) an injury to business or property occurring as a result of the first three elements. *United States v. Johnson*, 440 F.3d 832 (6th Cir. 2006); *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000). In addition, the Supreme Court has held that a RICO defendant must have not only participated in the scheme, but must have also participated in the operation or management of the enterprise itself. See *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). Thus, the elements of a RICO claim brought pursuant to 18 U.S.C. §1962(c) are: (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity. *Goren v. New Vision International, Inc.,* 156 F.3d 721, 727 (7th Cir. 1998). The plaintiff must also show that an injury to business or property occurred as a result of the violation. *VanDenBroek v. Commonpoint Mortgage Co.,* 210 F.3d 696, 699 (6th Cir. 2000).

### B.      Enterprise

Under RICO, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Thus, the statute provides two ways in which a RICO plaintiff can establish an enterprise: (1) proving the existence of a legal entity joining the parties; or (2) proving the existence of an association in fact between the parties.

Plaintiff argues that Baumhaft has operated a "real estate enterprise." This enterprise is comprised of his companies Midwest Express Funding, Universal Homes, Title Giant and others. In addition, the individual defendants were either "straw purchasers" of the real estate or mortgage brokers or appraisers and all participated in the fraudulent activities. It appears that Baumhaft operates a *defacto* partnership among defendants. The existence of an enterprise where there is no legal documentation requires proof of an association in fact. An association-in-fact enterprise "can be proven by showing: (1) that the associated persons formed an ongoing organization, formal or informal; (2) that they functioned as a continuing unit; and (3) that the organization was separate from the pattern of racketeering activity in which it engaged." See, *VanDenBroeck*, 210 F.3d at 699. Plaintiff has listed particular real estate transactions with detail to support the existence of a coordinated enterprise, although it is not clear how each entity was involved in the enterprise.

The Sixth Circuit has elaborated on the type of organization required for a RICO association-in-fact enterprise. There must be evidence there is an ongoing power structure, with each party to the enterprise assuming a distinct responsibility such that there is a division of

labor. *United States v. Johnson*, 440 F.3d 832, 840 (6th Cir. 2006) (emphasis added). As the court explained in *Johnson*:

> The hallmark of an enterprise is structure.... [T]here must be some structure, to distinguish an enterprise from a mere conspiracy, but there need not be much. A RICO enterprise is an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making. The continuity of an informal enterprise and the differentiation among roles can provide the requisite structure to prove the element of enterprise.

*Id*. (quoting *United States v. Rogers*, 89 F.3d 1326, 1337 (7th Cir.1996)).

In *VanDenBroeck*, the court held that simply conspiring to commit a fraud is not enough to trigger RICO liability if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes. *VanDenBroeck*, 210 F.3d at 699. Some minimal level of organizational structure between the entities involved is required. *Id.* Here, plaintiff established the existence of an organized structure between Baumhaft and the other defendants. Plaintiff has made an effort to identify and describe how defendants organized themselves within the enterprise in order to carry out the pattern of racketeering. Additionally, plaintiff has established that defendants had a relationship distinct from the alleged illegal purpose of avoiding collection of a legitimate judgment debt. In sum, plaintiff has established that defendants colluded in a manner that extends beyond a simple conspiracy, and therefore has established the existence of an association in fact.

### C. Pattern of Predicate Acts

RICO defines a "pattern of racketeering activity" as "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Crimes comprising "racketeering activity" are listed under 18

U.S.C. § 1961(1) and are commonly referred to as "predicate acts." The listed predicate acts include, among others: mail fraud (18 U.S.C. § 1341); wire fraud (18 U.S.C. § 1343); transportation of stolen property (18 U.S.C. § 2314); travel or transportation in aid of racketeering activity (18 U.S.C. § 1952); and receipt of stolen goods (18 U.S.C. § 2315). Plaintiff essentially alleges "financial fraud," wire fraud, mail fraud, bank fraud, and mortgage fraud.

The Supreme Court requires a RICO plaintiff do more than merely recite two predicate acts because "there is something to a RICO pattern beyond the number of predicate acts involved." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238 (1989). Rather, a plaintiff must show that "the predicate acts are related and that they constitute or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239 (emphasis added). It is this notion of "continuity plus relationship" which combines to produce a "pattern" under RICO. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th Cir. 2006). Thus, merely pointing to two predicate acts is insufficient to meet the pattern requirement. Plaintiff must present evidence of continuity. "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc*., 492 U.S. at 241. A closed period of continuity may be demonstrated "by proving a series of related predicates extending over a substantial period of time." *Id*. at 242. However, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id*. In *Moon*, 465 F.3d 719, the Sixth Circuit held the plaintiff failed to state a RICO claim because he did not establish

continuity. The plaintiff's claim was based on allegations his employer colluded with an insurance provider and a physician to deny him workers' compensation benefits. The court found that, even though predicate acts occurring over a 30-month period may have constituted a "significant period of time," facts establishing a RICO pattern were still lacking because all of the alleged predicate acts "were keyed to [the defendants'] single objective of depriving [the plaintiff] of his benefits." *Id*. at 725. Where a single objective is alleged, "the purported racketeering activity does not bear the markings of the long-term criminal conduct about which Congress was concerned when it enacted RICO." *Id*. at 725-26.

Here, to establish a RICO pattern, plaintiff cites the predicate acts of wire fraud, mail fraud, mortgage fraud, bank fraud, tax fraud, and "financial fraud." All of the alleged predicate acts revolve around the alleged sham real estate transactions and efforts to conceal Baumhaft's assets, including ownership in various real estate. Assuming *arguendo* that the conduct of defendants amounted to the alleged crimes, plaintiff has articulated the pattern of continuity plus relationship and has alleged facts establishing that the actions of Baumhaft and his associates pose a threat of continued criminal activity. For example, in 2003, Baumhaft used the compliant lender Title Giant,[3] whose CEO was Jack Wolfe, an alleged friend of Baumhaft. Both men conducted business in the same building. In one month (April, 2003), plaintiff submits that Title Giant arranged financing for Baumhaft in the amount of $634,000 for real estate purchases using false information. These purchases include three sales to co-defendant and straw-purchaser Glen

---

[3]Per plaintiff, on February 24,2006, the State of Michigan revoked Title Giant's lending license for improper lending practices, including false data on loan applications. OFIS Consent Order, 05-0476. (Brief, p. 12)

Thompson: 15811 Parkside, 781 Lakewood, and 13485 Hazelridge.  Money from each of these sales went to Baumhaft-controlled company Midwest Express: $23,000 for Parkside, $44,000 for Lakewood and $27,000 on Hazelridge.  Some of these properties were then sold by Thompson in June, 2005 with Midwest Funding, LLC and Midwest Funding receiving money ($66,000) although not listed on the HUD-1 statement as such recipient.

Where acts of fraud form the basis of the claims a plaintiff must comply with Fed.R.Civ.P. 9(b), which provides that in a complaint alleging fraud, "the circumstances constituting fraud ... shall be stated with particularity."  The Sixth Circuit reads Rule 9(b)'s requirement "liberally, ... requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir.1999) (citing *Coffey v. Foamex L.P.,* 2 F.3d 157, 161-62 (6th Cir.1993) (internal quotation marks and citation omitted)). "[A]llegations of fraudulent misrepresentations must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Id*. The elements of mail fraud under 18 U.S.C. § 1341 are: "(1) a scheme to defraud, and (2) use of the mails, or of an interstate electronic communication, respectively, in furtherance of the scheme." *Advocay Org.,* 176 F.3d at 322 (citing *United States v. Brown,* 147 F.3d 477, 483 (6th Cir.1998)).  A scheme to defraud consists of intentional fraud, deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the designed end.  To allege intentional fraud, there must be proof of misrepresentations or

omissions which were reasonably calculated to deceive persons of ordinary prudence and comprehension. Thus, the plaintiff must allege with particularity a false statement of fact made by the defendant on which the plaintiff relied. See, *Kenty v. Bank One, Columbus, N.A.,* 92 F.3d 384, 389-90 (6th Cir. 1996). Here, plaintiff sets forth a series of allegations, some exhibits including deposition testimony and documents. However, there is not sufficient specificity to find as a matter of law that this element of RICO is met.

**D.    Nexus**

The nexus element requires plaintiff to articulate in what manner defendants' activities furthered the alleged racketeering scheme. *Whaley v. Auto Club Ins. Ass'n*, 129 F.3d 1266, at *3 (6th Cir.1997). "To establish that an enterprise's affairs have been conducted 'through' a pattern of racketeering activity, there must be a nexus between the enterprise and the racketeering activity." *United States v. Qaoud*, 777 F.2d 1105, 1115 (6th Cir. 1985). Plaintiff's facts fail to set forth a sufficient basis to a nexus. Therefore, this must be proven at trial.

**E.    Resulting Injury**

The final element requires a RICO plaintiff to show that the defendants' alleged criminal activity caused it to suffer an injury to the business or property. In *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985), the Supreme Court held that a plaintiff must show injury caused "by the conduct constituting the [RICO] violation." Here, as discussed above, plaintiff failed to set forth facts sufficient to establish the existence of an injury to plaintiff's business or property. Not all costs associated with collecting the judgment are RICO injuries. See, Stochastic Decisions v.

DiDomenico, 995 F.2d 1158, 1166-67 (2nd Cir. 1993); *Chera v. Chera*, 2000 WL 1375271 (E.D. NY).  Any injury is thus far not shown to be the result of a RICO violation.

### 6. Conclusion

Because in this case, granting the motion for summary judgment would require the court to weigh the evidence and determine the truth of several matters, it is recommended that the motion be denied and the action be set for trial.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                s/Virginia M. Morgan
                                Virginia M. Morgan
                                United States Magistrate Judge

Dated: February 18, 2009

\

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record, Michael/Shelley Letzer (Action Lending Solutions), and Michael Baumhaft (Universal Homes, Midwest Express Funding, Investors Funding, City Energy, and Energy Source) via the Court's ECF System and/or U. S. Mail on February 18, 2009.

                                s/Jane Johnson
                                Case Manager to
                                Magistrate Judge Virginia M. Morgan